**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:26-CR-00246** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **CARNELL L. BRIGGS** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a MOTION TO SUPPRESS (the "Motion") filed by Defendant Carnell Briggs ("Briggs" or "Defendant"). [Doc. 24]. Defendant seeks to suppress all evidence recovered from the warrantless search of his vehicle on grounds the search did not fall under any established exceptions to the Fourth Amendment's warrant requirement. [Doc. 24-2]. The United States opposes the Motion. [Doc. 32]. The Court held an evidentiary hearing on September 8, 2026, during which the parties presented argument and testimony. [Doc. 43]. For the following reasons, the Motion is DENIED.

## BACKGROUND AND PROCEDURAL HISTORY

The Defendant moves to suppress evidence obtained during a search incident to arrest following a traffic stop conducted by Corporal Brandon Dugas ("Cpl. Dugas"), an officer with the Lafayette Police Department, on April 27, 2026. At the time of the stop, Briggs was under a term of supervised release stemming from his 2021 conviction on one count of felon in possession of a firearm. After pleading guilty to that count, on July 29, 2021, Briggs was sentenced to 37 months of imprisonment

followed by three years of supervised release.[1] As a condition of supervised release, Briggs was required to comply with the mandatory conditions of federal supervision, including that he "not commit another federal, state, or local crime." [*United States v. Carnell L. Briggs*, Criminal Docket No. 5:20-cr-00292-EEF-MLH ("*Briggs I*"), Doc. 35]; 18 U.S.C. § 3583(d)]. Briggs was also subject to the standard condition of supervision that he could "not own, possess or have access to a firearm, ammunition, destructive device, or dangerous weapon." [*Briggs I,* Doc. 35].

Three days prior to the stop, on April 24, 2026, Cpl. Dugas received information from Corporal Peter Ford ("Cpl. Ford") of the Lafayette Police Department that Briggs was a high-ranking member of the Step or Die criminal organization based in Shreveport, that he was known to carry large amounts of U.S. currency and firearms, and that he was going to be performing as a rapper at Club Truth in Lafayette on April 26, 2026. [Doc, 45-1, p. 10]. Cpl. Ford also explained that there was a possibility that a warrant had been issued for Briggs' arrest. [Doc. 47, pp. 49-50]. Cpl. Dugas was familiar with Briggs, whom he knew to be a well-known rapper in Louisiana and whose Instagram profile he had viewed. [Doc. 47, p. 6]. Cpl. Dugas also recognized Briggs' appearance from a prior encounter at Billy's Boudin & Cracklins in Lafayette, where he had seen Briggs driving a distinctive red and black Corvette. [Doc. 47, p. 8].

---

[1] Briggs pled guilty on February 22, 2021, to Count 1 of the Indictment charging him with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). [*Briggs I*, Docs. 19, 21]. Briggs' sentence was reduced to 31 months. [*Briggs I*, Doc. 44]. He was released on November 21, 2024, and his term of supervised release commenced on November 21, 2024. [*Briggs I*, Doc. 47].

On April 27, 2026, a federal arrest warrant was issued for Briggs for alleged violations of the conditions of his supervised release in connection with his 2021 conviction. [*Briggs I*, Doc. 49]. On the same day, at approximately 9:21 p.m., Cpl. Dugas was patrolling the 4500 block of Johnston Street in Lafayette, Louisiana, when Briggs' distinctive red and black Chevrolet Corvette passed. [Doc. 47, p. 11]. Officers also observed that the Corvette was followed by a Nissan Maxima which Cpl. Dugas believed to be Briggs' security detail. [Doc. 47, p. 12]. Observing an illegal window tint on Briggs' vehicle, Cpl. Dugas initiated a traffic stop. [Doc. 42, Manual Attachment of Dashcam Footage, at 0:00:02]. Subsequent bodycam footage captures the encounter and reflects the timing and sequence of events. [Doc. 42-1, Manual Attachment of Bodycam Footage].[2] The video footage shows Briggs stepping out of his vehicle and approaching Cpl. Dugas, who requested to see Briggs' driver's license. [*Id.*, at 0:01:08]. After fumbling with his phone, Briggs produced an electronic version of a driver's license bearing the name "Cardell Murphy."[3] [*Id.*, at 0:01:10-02:47]. Although he did not say anything at the time, Cpl. Dugas knew immediately that Briggs had provided him with a false identification because of his familiarity with Briggs' appearance and vehicle. [Doc. 47, p. 15].

---

[2] All time stamps indicated herein are taken from the bodycam footage of Cpl. Dugas, attached as Exhibit "5" to the Government's opposition brief. [Doc. 32 and Doc. 42-1, Manual Attachment].

[3] Louisiana has a mobile phone application called "LA Wallet" that allows residents to display their driver's license and other state issued permits and certifications on their cell phones.

Cpl. Dugas questioned Briggs about where he was coming from, and Briggs responded that he had left a female friend's house and was going to a bowling alley. [*Id.*, at 0:02:39]. Cpl. Dugas conducted a preliminary frisk of Briggs at 0:03:35 and at 0:03:57 pulled a large amount of cash out of Briggs' pocket. Cpl. Dugas then asked Briggs if there was anything illegal in his car, to which Briggs responded that there was not. [*Id.*, at 0:10:15]. At approximately 0:10:18, Cpl. Dugas asked Briggs whether he had additional money, to which Briggs responded that all the money he had was located in his pocket. [*Id.*, at 00:10:18].

Cpl. Dugas then handcuffed Briggs and escorted him to the side of his police car. [*Id.*, at 0:20:11-0:20:29].[4] Cpl. Dugas later testified at the evidentiary hearing that he handcuffed and detained Briggs at that time for officer safety because he knew that Briggs had given him a false identification. [Doc. 47, p. 19]. Another officer on the scene conducted a second pat down of Briggs, at which time he emptied Briggs' pockets — which contained the large amount of cash Cpl. Dugas saw in the initial frisk — and put Briggs into the back of Cpl. Dugas' police car. [*Id.*, at 0:20:49-0:21:06]. At that time, Briggs was advised of his Miranda rights. [*Id.*, at 0:21:26]. In response to further questioning about his identity, Briggs admitted to Cpl. Dugas that he had provided him with false identification, stating that his real name is Carnell Briggs. [*Id.*, at 0:22:38]. He also stated that he had an active warrant in Shreveport for flight from an officer. [*Id.*, at 0:22:48]. He denied having a firearm in his vehicle. [*Id.*, at

[4] At the same time Kamryn Michaels, a passenger in Briggs' car, was also handcuffed and was told to stand on the other side of the police car.

0:25:52]. At approximately 0:26:01, Cpl. Dugas requested consent to search Briggs' vehicle, which Briggs declined.

Cpl. Dugas then ran Briggs' name through the National Crime Information Center records and obtained a criminal history report ("NCIC Report"). The report showed two active warrants: (i) a Shreveport Police Department warrant for aggravated flight from an officer; and (ii) a U.S. Marshal warrant, which had been issued earlier that day, for a violation of the conditions of Briggs' supervised release.[5] [Doc. 41-5, p. 1]. Seeing an active warrant for violation of supervised release, Cpl. Dugas informed the other officers on the scene that they could search Briggs' vehicle "incident to arrest." [*Id.*, at 0:28:05]. Cpl. Alondrea Young searched Briggs' wingspan area within the Corvette and located a Glock 19, 9 mm caliber firearm underneath the driver's seat. [*Id.*, at 0:29:02].

---

5 The federal warrant appeared on the NCIC Report as follows:

> CMC/00 – ARMED AND DANGEROUS
> […]
> OFF/PROB VIOLATION- SEE MIS
> OOC/POSSESSION OF WEAPONS
> […]
> ORI IS US MARSHALS SERVICE HEADQUARTERS ARLINGTON…

[Doc. 41-5, p. 1].

Cpl. Dugas testified that, when he first saw the federal warrant on the NCIC Report, he thought the warrant was for "possession of weapons," *i.e.*, a federal weapons offense. [Doc. 47, p. 23]. He therefore authorized the search of Briggs' vehicle as a search incident to arrest for the federal weapons offense. He did not learn until after the search, at the jail, that the federal warrant was actually for a violation of Briggs' supervised release, which had been issued earlier that day. It is undisputed that the entry of "OOC/POSSESSION OF WEAPONS" in the NCIC Report communicates that Briggs' offense of conviction was for a weapons charge.

On June 17, 2026, Briggs was indicted on one count of Possession of a Firearm or Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). On August 10, 2026, Defendant filed the instant Motion, seeking to suppress any and all evidence taken from the search of his vehicle, including the firearm. The Government opposes the Motion, and following an evidentiary hearing, the Court ordered post-hearing briefs.[6] All issues having been fully briefed, the Motion is ripe for review.

## LAW AND ANALYSIS

### I. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., AMEND IV. Warrantless searches and seizures are "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (footnote omitted). Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993). "However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citation omitted). *See also Coolidge v. New Hampshire*, 403 U.S. 443, 445 (1971).

---

[6] The parties' post hearing memoranda were filed on September 23, 2026. [Docs. 48, 49].

Here, the Government argues that the search of Briggs' car was lawful for multiple reasons, as follows: (i) although Briggs had been secured by law enforcement at the time of the search, a protective sweep was still permissible pursuant to *Michigan v. Long*;[7] (ii) because Briggs was on supervised release, he had a significantly diminished expectation of privacy compared to the general public;[8] and (iii) the search of Briggs' vehicle was reasonable because officers reasonably believed that Briggs had an active arrest warrant for a weapons offense, which satisfies the second prong of *Arizona v. Gant,* 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).[9] Finding that the issues raised in the Motion should be analyzed under *Gant*, the Court gives no further consideration to the Government's first two arguments.

---

7 Although the Government acknowledges that Briggs had been secured by law enforcement at the time of the vehicle search, it nevertheless contends that a protective sweep was permissible pursuant to *Michigan v. Long*, which holds that a police officer may conduct a protective sweep of the car "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' [a belief] that the suspect is dangerous and the suspect may gain immediate control of weapons." 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201 (1983).

Applying this rationale, the Fifth Circuit has held that "[p]olice may not conduct a *Long* search if the suspect has been arrested." *United States v. Johnson*, 163 F.4th 933, 938 (5th Cir. 2026). But in *United States v. Rodriguez*, the Fifth Circuit made clear that *Long* searches are premised on the possibility that a suspect might return to a vehicle, *Long*, 463 U.S. at 1052, while *Gant* searches occur when a suspect is being placed under arrest and is therefore unlikely to return to the vehicle. *United States v. Rodriguez*, 33 F.4th 807, 812–13 (5th Cir. 2022). Here, Briggs had already been arrested and was secured in the back of a police squad car when officers searched the vehicle and therefore no longer had access to the vehicle or the ability to obtain a weapon from it. Considering the foregoing, the search did not fall within the protective sweep exception to the warrant requirement established in *Long.*

8 The Court acknowledges the jurisprudence that a person on supervised release possesses a diminished expectation of privacy under the Fourth Amendment, however, finding *Gant* applies, it does not address the Government's argument urging this exception as an independent basis for the search of Briggs' car.

9 Notably, the Government does not posit in its briefing that the automobile exception to the warrant requirement applies. Under the automobile exception, police may conduct a

## II. Analysis

Although the Fourth Amendment generally prohibits warrantless searches, the search incident to arrest exception permits certain warrantless searches following a lawful arrest. In *Arizona v. Gant*, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search _or_ it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. 332, 351 (emphasis added).

Here, Briggs was handcuffed in the back of a police vehicle at the time of the search, therefore, the first prong of *Gant* is inapplicable. The relevant inquiry, therefore, is whether, under the totality of the circumstances known to Cpl. Dugas at the time of the search, it was reasonable to believe that Briggs' vehicle might contain evidence relevant to the offense underlying his arrest. As the bodycam footage and testimony make clear, Briggs was arrested on the outstanding federal warrant for violation of his conditions of supervised release. And it is undisputed that Cpl. Dugas did not know the exact violations for which the federal warrant was issued or the exact terms of federal supervised release – indeed he testified that he misread the

warrantless stop and search of a vehicle if they have probable cause to believe the vehicle contains contraband or other evidence of a crime. *United States v. Ross*, 456 U.S. 798, 799 (1982) (citing *Carroll v. United States*, 267 U.S. 132, 158–59 (1925)). The automobile exception is a well-recognized exception to the warrant requirement and is justified "by the mobility of vehicles and occupants' reduced expectations of privacy while traveling on public roads." *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016). Probable cause for a search pursuant to the automobile exception is determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1982). Here, the Government has not presented any argument that the automobile exception applies to the case at hand.

NCIC Report and believed that the federal arrest warrant was issued for a probation violation involving a "weapons charge." But among the mandatory conditions of supervised release required by federal law is a condition that a defendant "must not commit another federal, state, or local crime." [*Briggs I*, Doc. 35, p. 3]; *see* 18 U.S.C. § 3583(d). Further, one of the standard conditions of supervised release prohibits the defendant from owning, possessing, or having access to a firearm [*Briggs I*, Doc. 35, p. 3] – conduct that is also prohibited under federal and Louisiana law for convicted felons. *See* 18 U.S.C. § 922(g)(1); La. Stat. Ann. § 14:95.1.

The record, including the documentary and testimonial evidence, establishes Cpl. Dugas' reasonable belief that Briggs' vehicle might contain evidence of violations of his supervised release. Before the stop, Cpl. Ford informed Cpl. Dugas of Briggs' criminal history, the possibility of an active warrant, and intelligence that Briggs was known to carry firearms and large amounts of cash. During the stop, a pat-down revealed a roll of cash, consistent with that information. Briggs also provided false identification, and officers discovered that his passenger, Kamryn Michaels, had an active warrant.[10] The NCIC Report for Briggs likewise confirmed two active warrants — one for aggravated flight from an officer and one for a supervised release violation — and designated Briggs as "armed and dangerous." [Doc. 41-5, p. 1]. Thus, at the time of the search, Cpl. Dugas knew of Briggs' outstanding warrants, his supervised release status, his designation as "armed and dangerous," and at least one confirmed violation of his supervised release — presentation of false identification — as well as

---

10 Ms. Michaels was eventually released as Cpl. Dugas was unable to confirm her warrant. [Doc. 47, p. 16].

other indicia of criminal activity, including traveling with a large amount of cash and traveling in a caravan with security.

Under *Gant*, the question is not whether Cpl. Dugas knew precisely what evidence the vehicle would contain, but whether the facts known to him, considered collectively, provided a reasonable basis to believe that the vehicle might contain evidence relevant to the offense of arrest. 556 U.S. at 343. Based on the totality of the evidence in this case, the Court finds that there was a reasonable basis for Cpl. Dugas to believe that a search of Briggs' vehicle might lead to additional evidence related to a violation of the terms of his supervised release. Accordingly, law enforcement's search of the Defendant's vehicle and recovery of the subject firearm underneath his seat fell within the search incident to arrest exception to the warrant requirement pursuant to *Arizona v. Gant*. 556 U.S. at 351 (2009).

**III. Conclusion**

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's MOTION TO SUPPRESS [Doc. 24] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 22nd day of October 2026.

David C Joseph

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE